UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARK WOOD, ) | |
|     Plaintiff, ) | |
| ) | |
| vs. ) | 1:02-cv-1450-RLY-VSS |
| ) | |
| MARION COUNTY SHERIFF, ) | |
|     Defendant. ) | |

**ENTRY ON DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, OR, IN THE ALTERNATIVE, MOTION FOR NEW TRIAL OR TO ALTER OR AMEND JUDGMENT**

    Plaintiff, Captain Mark Wood ("Wood"), filed suit against Defendant, the Marion County Sheriff's Department ("Defendant"), after he was disciplined for what he believes was an exercise of his First Amendment right to free speech. This matter was tried before a jury on January 24-26, 2005. Defendant moved for judgment as a matter of law at the conclusion of Plaintiff's case, and the court took Defendant's motion under advisement at that time. On January 26, 2005, the jury returned a verdict in favor of Wood and awarded him $250,000 in compensatory damages. On January 27, 2005, the court entered judgment on the verdict. The case is now before the court on Defendant's Renewed Motion for Judgment as a Matter of Law, or, in the Alternative, Motion for New Trial or to Alter or Amend Judgment. For the following reasons, and pursuant to Federal Rule of Civil Procedure 50, the court **denies** Defendant's Renewed Motion for Judgment as a Matter of Law and **grants** Defendant's Motion for New Trial or to Alter or

1

Amend Judgment.

**I.     Background**

Wood's lawsuit, based on 42 U.S.C. §1983 and the First Amendment, sought "money damages against the Marion County Sheriff for retaliating against [him] for his uncovering and then refusing to submit false crime statistics to the Federal Bureau of Investigation (FBI), in a cover-up effort by [Cottey] and his chief deputy to influence the 2002 primary and general elections for Marion County Sheriff." (*See* Amended Complaint). During the events leading up to this case, Wood was employed as a Lieutenant with the Marion County Sheriff's Department. One of his responsibilities was compiling crime statistics and submitting them to the Federal Bureau of Investigation in the form of Uniform Crime Reports ("UCRs"). In August 2002, Wood was suspended by former Sheriff Jack Cottey ("Cottey") because of his refusal to submit inaccurate UCRs that under-reported the level of crime in Marion County. The unpaid suspension lasted for four days, causing Wood to lose approximately $950 of pay. In addition to the suspension, Wood was retaliated against verbally. For example, Cottey was quoted in an Indianapolis Star article calling Wood a "fucking lieutenant," and Cottey said that he would "get that skinny s.o.b.," referring to Wood.

Trial testimony from Wood, his wife (Jill), his parents (Tommie and Robert), Erin Snyder, and Mick Hauck established that Wood suffered emotional damages as a result of the retaliation. These witnesses testified that during the relevant time period, Wood's appearance and demeanor changed. He lost weight, seemed to be under a great deal of

stress, lost his sense of humor, and was visibly nervous.  However, Wood received no psychiatric or medical care for these symptoms, and there is no evidence that he will need any such care in the future.  Wood is still a member of the Marion County Sheriff's Department, and he was promoted from the rank of Lieutenant to that of Captain approximately five months after his suspension.

At the conclusion of the trial, the jury was instructed, in part: "In determining what amount of damages, if any, to award to Mr. Wood for emotional pain and suffering, you may consider the nature, duration, and extent of the suffering, mental anguish, apprehension, or discomfort endured by Mr. Wood which, in your judgment, warrants reasonable compensation."  (Final Jury Instructions at 23).  The jury returned a verdict in favor of Wood and awarded him $250,000 in compensatory damages.

## II.     Defendant's Motion for Judgment as a Matter of Law

Before trial, Defendant had moved for summary judgment of the lawsuit, which the court granted in part and denied in part.  (Entry on Defendants' Motion for Summary Judgment (entered September 21, 2004)).  The issue of whether Cottey's suspension of Wood was part of a policy or practice was not before the court at the Summary Judgment stage.  (Entry on Defendants' Motion for Summary Judgment at 26); however, it was before the jury at trial.  (*See* Final Jury Instructions at 20-21).[1]  Defendant now renews its

---

[1] The instructions stated, in relevant part:
"To establish a federal civil rights claim under Section 1983 against the Marion County Sheriff's Department, Plaintiff must prove by a preponderance of the evidence that Defendant's unconstitutional conduct was a result of the Marion County Sheriff's Department's official policy, practice, or custom . . .

trial motion for Judgment as a Matter of Law on the basis of its argument that Cottey's actions do not constitute a policy or practice of the Marion County Sheriff's Department.[2]

**A.     Standard**

"Under Rule 50, a court should render judgment as a matter of law when 'a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (quoting Fed. Rule Civ. Proc. 50(a)).  The standard for a Rule 50 motion is the same as that applied for summary judgment. *Id*.  A party is entitled to summary judgment if the record shows "that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A fact is material if it is outcome determinative. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is genuine "only when a

---

When I use the term 'official policy,' I mean:
- A rule or regulation passed by the Marion County Sheriff's Department;
- A decision or policy made by a policy-making official of the Marion County Sheriff's Department.  This includes the policy maker's approval of a decision or policy made by someone else, even if that person is not a policy-making official; or
- A custom of disciplining employees in retaliation for exercising protected speech rights that is persistent and widespread, so that it is the Marion County Sheriff Department's standard operating procedure.  A persistent and widespread pattern may be a custom even if the Marion County Sheriff's Department has not formally approved it, so long as Plaintiff proves that a policy-making official knew of the pattern and went along with it.  This includes a situation where a policy-making official must have known about a subordinate's actions/failures to act by virtue of the policy-making official's position."

(Final Jury Instructions at 20, 21 (Instruction #15 and 16)).

[2] Wood's Petition for Attorney's Fees and Expenses is also pending in this court, and it will be addressed in a separate, future Entry.

reasonable jury could find for the party opposing the motion based on the record as a whole." *Pipitone v. United States*, 180 F.3d 859, 861 (7th Cir. 1999).

**B.      Analysis**

For § 1983 purposes, a policy or custom can take any of three forms:

> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law; or (3) an allegation that the constitutional injury was caused by a person with 'final policymaking authority.'

*Garrison v. Burke*, 165 F.3d 565, 571-72 (7th Cir. 1999) (citing *Baxter v. Vigo County School Corp.*, 26 F.3d 728, 734-35 (7th Cir. 1994). Wood has not argued that his rights were violated by an express policy of the Defendant.

Wood presented evidence at trial of his own constitutional injury as well as that of Joseph McAtee. McAttee was a volunteer civilian employee of the Marion County Sheriff's Department when he decided to run for Sheriff against Thomas Schneider in 2002. Schneider was Cottey's preferred and endorsed candidate. McAttee was fired after announcing his intent to run for the office. At trial, Defendant offered testimony that McAttee was fired for refusing to obey a lawful order; however, in light of the standard for judgment as a matter of law, the court will assume that McAttee's firing was a politically motivated violation of his constitutional rights. Even in the light most favorable to Wood, these two violations are not enough to establish a widespread practice. *See*, *e.g.*, *Carter v. Morris*, 164 F.3d 215, 219-20 (4th Cir. 1999) (three related

5

incidents insufficient to show widespread practice); *Roach v. City of Evansville*, 111 F.3d 544, 549 (7th Cir. 1977) (two incidents not enough).

However, Wood did offer evidence from which a reasonable jury could determine that his constitutional injury was caused by a person with final policymaking authority. "[W]hether a particular official has 'final policymaking authority' is a question of state law." *St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988); *see also McMillian v. Monroe County*, 520 U.S. 781, 785 (1997) ("Our cases on the liability of local governments under § 1983 instruct us to ask whether government officials are final policymakers for the local government in a particular area, or on a particular issue."). Pursuant to Indiana law, the Sheriff is empowered to establish municipal policy for the purpose of disciplinary matters such as the one at issue in this case.

More specifically, the Sheriff's Merit Board, established by the City-County Council for the City of Indianapolis, is the final policymaking authority regarding the discipline of Marion County Sheriff's Department deputies *if* the discipline lasts for a period of longer than 15 days. Ind. Code § 36-8-10-11. But for short-term suspensions, policymaking authority is manifested in the Sheriff. Section 36-8-10-11(b) of the Indiana Code provides that "[t]he sheriff may temporarily suspend an officer with or without pay for a period not exceeding fifteen (15) days, without a hearing before the [merit] board." Since Wood's suspension was only for four days, the Sheriff's decision was not subject to review by the board. As such, the Sheriff was the final policymaker. *Cf. St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) ("when a subordinate's decision is

subject to review by the municipality's authorized policymakers, they have retained authority to measure the official's conduct for conformance with their policies").

In arguing that the Sheriff is not a policymaker, Defendant relies on the Seventh Circuit's 1992 case of *Auriemma v. Rice*. 957 F.2d 397. In that case, police officers claimed that actions (demotions) were taken against them by the Chief of Police for racial and political reasons. *Id.* at 397. The Seventh Circuit found that there was no municipal liability because the transfers were in contravention of specific legislative ordinances. *Id.* at 339. In the case at bar, Defendant argues that *Auriemma* confirms that Cottey did not have policymaking authority, but more recent Seventh Circuit case law shows that Defendant's interpretation of *Auriemma* is a misreading. In its 2004 decision of *McGreal v. Ostrov*, the Seventh Circuit explained:

> defendants in the instant case now claim that a police chief cannot be a final policymaker as a matter of Illinois law. They rely on *Auriemma* . . . and *Horwitz v. Board of Educ. of Avoca School Dist. No. 37*, 260 F.3d 602, 619 (7th Cir. 2001), for the proposition that, under Illinois law, neither a police chief nor a village president are final policymakers. Neither case supports that proposition.

*McGreal v. Ostrov*, 368 F.3d 657, 686 (7th Cir. 2004).

*McGreal* was based on Illinois law and this case is based on Indiana law, but the two systems are similar enough that the court finds *McGreal* guiding. For example, both state systems have merit boards and require merit-based employment practices within the Sheriff's Department. *Zook v. Brown*, 865 F.2d 887, 895 (7th Cir. 1989) (discussing Illinois statutes). One difference between Illinois and Indiana is that Illinois Sheriffs are

7

empowered to implement disciplinary action against deputies for up to thirty days, whereas in Indiana the limit is fifteen days, but the court sees no legal significance in this distinction. *Compare* Ill. Code § 3-8013, *with* Ind. Code § 36-8-10-11.

Because the court finds that there is sufficient evidence for a jury to determine that a "policy, practice, or custom" of the Defendant caused Wood's First Amendment deprivation, Defendant's motion for judgment as a matter of law must be denied.

## III. Defendant's Motion for New Trial or to Alter or Amend Judgment

### A. Evidentiary Issues

#### 1. Inclusion of the Written Reprimand and Newspaper Articles

At trial, the court admitted into evidence a copy of the written reprimand Wood received from Cottey, notifying him of his suspension. The court also allowed in copies of two redacted Indianapolis Star newspaper articles, dated August 7 and 8, 2002, covering the events surrounding the incident. Defendant argues that the admission of this evidence was in error and that its admission resulted in an unfair trial. Defendant cites to *Heuer v. Weil-McLain* in support of its proposition that the evidence was not properly before the jury. 203 F.3d 1021 (7th Cir. 2000). Upon review of *Heuer*, which addresses an appeal from a District Court's grant of summary judgment, this court sees no connection between that case and the one at bar.

The letter and the newspaper articles were admitted not for the truth of the matters contained therein but as evidence of the personal and public humiliation suffered by Wood. *See* Federal Rule of Evidence 803(3). Additionally, the court determined at trial

8

that the probative value of these pieces of evidence outweighed any prejudicial value they may have had. Defendant's conclusory statement to the contrary is unconvincing.

### 2.     Exclusion of Lorah's Internal Affairs Report

Defendant next argues that the court improperly excluded the "internal affairs report" generated by William Lorah and relating to Wood's suspension. (Defendant's Brief in Support of Its Motion at 12; Ex. E). Defendant's contention that "at both the pretrial conference and at trial Plaintiff focused his objection to the exhibit only as hearsay" is not supported by the record. (*See, e.g.,* Plaintiff's Objection to Defendant's Recently Disclosed Witness and Exhibits at 3-5).

The court reaffirms its decision in limine, which was that "Plaintiff's objection to Defendant's Exhibit E, the July 30, 2002 Internal Affairs Memorandum from Lieutenant William Lorah to Sheriff Jack Cottey, is sustained in view of live testimony of Lorah and Cottey." (Entry for January 13, 2004 at 3-4). Lorah and Cottey both testified at trial regarding their discussion of the contents of the report, rendering the report itself cumulative; furthermore, the report contained hearsay and its admission would have placed undue emphasis on its contents. *See* Fed. R. Evid. 403.

The court notes that Defendant objected to Wood's admission of his own interview with Internal Affairs on these same grounds: "Objection: Plaintiff will be available to testify at trial. His transcribed interview to Internal Affairs therefore is redundant, cumulative, and of no assistance to the jury in determining the issues at hand. His transcribed statement further contains hearsay testimony that is not admissible. See

9

Fed. R. Evid. 801-804." (Defendant's Objections to Plaintiff's Trial Witnesses and Exhibits at 3). The court sustained Defendant's objection to the Internal Affairs records. (Entry for January 13, 2004 at 4).

**B.      Excessive Damages**

Defendant's final and most significant argument is that, pursuant to Federal Rule of Civil Procedure 59(a), it is entitled to a new trial because the compensatory damages awarded to Wood were excessive. Defendant argues that the jury's verdict awarding Wood $250,000 must have been motivated by passion and prejudice and that said prejudice must have infected the verdict itself. (*See* Defendant's Brief in Support of Its Motions at 10). Additionally, according to Defendant, the prejudiced verdict means that remittitur is an inadequate remedy at this stage.

In the Seventh Circuit, review of a compensatory damages award is guided by three factors: "(1) whether the award is monstrously excessive; (2) whether there is no rational connection between the award and the evidence; and (3) whether the award is roughly comparable to awards made in similar cases." *David v. Caterpillar, Inc.*, 324 F.3d 851, 864 (7th Cir. 2003) (citing *E.E.O.C. v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1285 (7th Cir. 1995)). The jury's decision regarding compensatory damages is entitled to deference, but "the court must also ensure that the award is supported by competent evidence." *Ramsey v. American Air Filter Co., Inc.*, 772 F.2d 1303, 1313 (7th Cir. 1985).

In light of the evidence at trial regarding Wood's suspension and his work

environment, including his public humiliation and the physical manifestations of the strain he was under, such as exhaustion, weight loss, and shaking hands, the court cannot conclude that the compensatory award was unsupported by the evidence.  However, the award is clearly incomparable to awards in other analogous Seventh Circuit cases, leading the court to conclude that the damages awarded in this case were excessive.[3]  *See Fleming v. County of Kane, State of Ill.*, 898 F.2d 553, 562 (7th Cir. 1990) ("we cannot conclude that the award of $40,000 was unsupported by the evidence.  Thus, the propriety of this damage award hinges on the compatibility of this award to awards which have been given in other similar cases") (internal citation omitted).

In *Fleming*, the Seventh Circuit affirmed the District Court's reduction of damages from $120,000 to $40,000.  *Id.*  In that case, Plaintiff, the victim of First Amendment retaliation, was disciplined repeatedly over a period of three months and eventually fired.  *Id.* at 555.  There was trial testimony that Plaintiff suffered embarrassment and

---

[3] The court limits its analysis in this case to recent cases from within the Seventh Circuit.  Wood's counsel has referred the court to a large number of cases that supposedly establish that the acceptable damages range for this case meets and even exceeds the $250,000 mark.  Many of these verdicts, however, were from unreported cases or from cases outside of the Seventh Circuit, which are thus subject to different standards for remittitur.  For example, the Eight Circuit, amongst others, only grants remittitur "when the verdict is so grossly excessive as to shock the conscious of the court."  *Eich v. Board of Regents*, 350 F.3d 752, 763 (8th Cir. 2003).  The Seventh Circuit does not use the "shock the conscious" standard.  On the other hand, Defense counsel has suggested that the proper range for damages is between $6,000 and $50,000, but some of the cases it cites are fifteen years old or more.  *E.g.*, *Levka v. City of Chicago*, 748 F.2d 421 (7th Cir. 1985); *Joan W. v. City of Chicago*, 771 F.2d 1020 (7th Cir. 1985); *Taliaferro v. Augle*, 757 F.2d 157 (7th Cir. 1985).  Since the range of compensatory damages awarded for like cases can change and shift over time, the court finds that recent cases offer more appropriate grounds for comparison.

11

humiliation and that the stress he suffered aggravated his physical condition.  *Id*. at 562.
The case went before the Seventh Circuit, where Defendant argued that the reduced award of $40,000 was still excessive.  Upon review of similar cases, the Seventh Circuit upheld the award of $40,000, finding that "damage awards in this context have ranged from $500 to over $50,000."  *Id*.

The uppermost limit of compensatory damage awards for emotional injuries in comparable cases is higher today than it was in 1990 (i.e., it is greater than $50,000), but it has not increased by a factor of 5 (i.e., it has not increased to $250,000).  For example, in *Lampley v. Onyx Acceptance Corp.*, the Seventh Circuit upheld a $75,000 compensatory award for emotional distress when Plaintiff was the victim of retaliatory discharge and had sought counseling.  340 F.3d 478 (7th Cir. 2003).  And in *Tullis v. Townley Engineering & Manufacturing Co.*, an $80,000 compensatory award was upheld for the victim of a retaliatory discharge under Title VII.  243 F.3d 1058 (7th Cir. 2001).  In *Dishnow v. School Dist. of Rib Lake*, the Seventh Circuit held that the $23,750 compensatory award that was remaining after remittitur was not excessive; Plaintiff in *Dishnow* was the victim of retaliatory firing in violation of the First Amendment, and he had been publicly humiliated and defamed.  77 F.3d 194 (7th Cir. 1996).  Upon review, the court finds that the jury's compensatory award of $250,000 is incompatible with these and other comparable cases.

While the jury's $250,000 verdict is excessive, the court does not find it necessary to infer passion or prejudice from the size of the verdict alone.  *See Dresser Industries,*

12

*Inc., Waukesha Engine Div. v. Gradall Co.*, 965 F.2d 1442, 1448-49 (7th Cir. 1992) (noting in dicta: "[defendant's] theory, however, is that passion and prejudice may be inferred from the size of the award, an unclear proposition.  In the Fifth Circuit, prejudice can be inferred from size alone.  Older cases from this circuit, however, seem to reject that idea").  In the absence of a finding of jury prejudice, either a Rule 59(e) remittitur or a Rule 59(a) new trial is appropriate at this stage, and the court leaves it up to Wood to choose between the two.  *See Fleming*, 898 F.2d at 561 ("the district court in this case granted defendants' motion for a new trial on this issue with the option for Mr. Fleming to accept a remittitur in the amount of $80,000"); *Sanders v. City of Indianapolis*, 837 F.Supp. 959, 969 (S.D. Ind. 1992) (Barker, J.) ("[i]n accordance with the law of this circuit, the Court, therefore, presents [Plaintiff] with the option either of accepting a reduction in the award of damages . . . or a new trial").

　　Determining a specific dollar amount to compensate a victim for intangible damages is challenging, but the court is guided by its review of comparable cases within the Seventh Circuit, the trends it observes in those cases, and the fact-specific evidence at trial.  While there was evidence presented that Wood was publicly humiliated and suffered emotionally as a result of the violation of his rights, there was no evidence that he sought any medical care or counseling.  Wood kept his job and was promoted with a pay raise just months after his suspension.  Furthermore, Cottey is no longer the Marion County Sheriff, and Cottey's endorsed candidate (Thomas Schneider) did not win election in 2002.  If Wood elects to accept remittitur, his compensatory damages will be

reduced to $50,000, the maximum amount to which he is reasonably entitled for the harm he suffered.

**V.     Conclusion**

For the foregoing reasons, Defendant's Motion for Judgment as a Matter of Law is **denied** and Defendant's Motion for a New Trial or to Alter or Amend the Judgment is **granted**. In the event that Wood chooses a remittitur over a new trial, the court finds that Wood is entitled to $50,000 in compensatory damages.

The court hereby **instructs** Wood to notify the court of his decision to accept remittitur or proceed to a new trial within thirty days of today's ruling.[4]

**It is so ordered** this 21st day of June 2005.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

---

[4] "Note: An order setting a case for a new trial is not final and therefore not appealable under 28 U.S.C. § 1291. Further, a party may not appeal from a judgment to which it consents, and because accepting a remittitur in lieu of a new trial is considered 'consensual,' the acceptance of a remittitur is also not appealable." *Sanders*, 837 F.Supp. at 970 n.13 (citing *Ash v. Georgia-Pacific Corp.*, 957 F.2d 432, 437 (7th Cir. 1992)).

Electronic Copies to:

David Robert Brimm
WAPLES & HANGER
dbrimm@wapleshanger.com

Allison Wells Gritton
OFFICE OF CORPORATION COUNSEL
agritton@indygov.org

Robin M. Lybolt
OFFICE OF CORPORATION COUNSEL
rlybolt@indygov.org

Anthony W. Overholt
OFFICE OF CORPORATION COUNSEL
aoverhol@indygov.org

Suzannah Wilson Overholt
OFFICE OF CORPORATION COUNSEL
soverhol@indygov.org

Richard A. Waples
WAPLES & HANGER
richwaples@aol.com